1  THOMAS P. O'BRIEN
   United States Attorney
2  CHRISTINE C. EWELL
   Assistant United States Attorney
3  Chief, Criminal Section
   ROBERT E. DUGDALE (California State Bar No. 167258)
4  Assistant United States Attorney
   Chief, Violent and Organized Crime Section
5         1500 United States Courthouse
          312 North Spring Street
6         Los Angeles, California 90012
          Telephone: (213) 894-4685
7         Facsimile: (213) 894-3713
          e-mail: robert.dugdale@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,     )   CR No. 99-83(A)-DOC
                                  )
13           Plaintiff,           )   GOVERNMENT'S OPPOSITION TO
                                  )   DEFENDANT CRISPIN ALVIDREZ'S
14      v.                        )   SUPPLEMENTAL MOTION TO WITHDRAW
                                  )   HIS GUILTY PLEA
15  CRISPIN ALVIDREZ,             )
                                  )   Hearing Date: 8/18/08
16           Defendant.           )   Time:        1:30 p.m.
    _____ )
17                                    Courtroom of the Honorable
                                      David O. Carter
18

19

20

21

22

23

24

25

26

27

28

1      Plaintiff, United States of America, by and through its attorney of record, Assistant United

2 States Attorney Robert E. Dugdale, respectfully files this opposition to defendant Crispin Alvidrez's

3 supplemental motion to withdraw his guilty plea.

4      This opposition is based upon the attached memorandum of points and authorities, the

5 accompanying exhibits, the accompanying declaration of Robert E. Dugdale, and the records and files

6 in the underlying criminal case, <u>United States v. Crispin Alvidrez</u>, No. CR 99-83(A)-DOC.

7 DATED: August 8, 2008

8                          Respectfully submitted,

9                          THOMAS P. O'BRIEN
United States Attorney

10

11                          CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

12

13                          ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Violent and Organized Crime Section

14

15                          Attorneys for Plaintiff-Respondent
United States of America

2

TABLE OF CONTENTS

PAGE

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.     PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       A.    DEFENDANT'S DELAY IN FILING HIS MOTION TO WITHDRAW
             HIS GUILTY PLEA, AS WELL AS THE PREJUDICE THAT WILL
             BE INFLICTED ON THE GOVERNMENT IF DEFENDANT IS
             ALLOWED TO WITHDRAW HIS PLEA MORE THAN SEVEN
             YEARS AFTER THE FACT, ARE TWO FACTORS THAT STRONGLY
             FAVOR A DECISION TO DENY DEFENDANT'S MOTION . . . . . . . . . . . . . . . 4

       B.    THE TIMING OF DEFENDANT'S EFFORTS TO WITHDRAW HIS
             GUILTY PLEA FURTHER CONFIRMS THAT THE MOTIVE BEHIND
             DEFENDANT'S EFFORTS TO WITHDRAW HIS GUILTY PLEA WAS
             AN IMPROPER MOTIVE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       C.    THE NEW MOTIVATIONS DEFENDANT HAS INVENTED AS THE
             PURPORTED REASONS WHY HE SHOULD HAVE BEEN ALLOWED
             TO WITHDRAW HIS PLEA DO NOT OVERCOME THE FACT
             DEFENDANT SOUGHT TO WITHDRAW HIS GUILTY PLEA FOR
             AN IMPROPER PURPOSE BACK IN 2001 . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

             1.    The Purported Discovery Of "New Evidence" Does Not Justify
                   Allowing Defendant To Withdraw His Guilty Plea Now . . . . . . . . . . . . . 7

                   a.    The "New Evidence" Defendant Cites as a Basis to Withdraw
                         His Guilty Plea Was Evidence that Existed and Had Been
                         Disclosed to the Defense Prior to the Time Defendant Entered
                         His Guilty Plea . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                   b.    Defendant Did Not Receive Ineffective Assistance of Counsel from
                         his Former Trial Counsel, Darryl Exum . . . . . . . . . . . . . . . . . . . . . . . 8

                   c.    Even if One Overlooks the Contrary Statements of Defendant's
                         Former Counsel Concerning His Review of the Evidence with
                         Defendant as Well as Defendant's Statements Under Oath
                         When he Entered his Guilty Plea, The "New Evidence"
                         Defendant Claims He "Discovered" Following His Guilty Plea
                         Could Not Have Plausibly Motivated Defendant's Decision to
                         Seek to Withdraw his Guilty Plea in 2001 . . . . . . . . . . . . . . . . . . . . . 10

                         (1)   The Montebello Murders . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                         (2)   The Conspiracy to Kill Jessie Detevis . . . . . . . . . . . . . . . . . 13

                         (3)   The Conspiracy to Kill John Turscak . . . . . . . . . . . . . . . . . 14

                         (4)   The Conspiracy to Kill Lorenzo Lopez . . . . . . . . . . . . . . . . 15

TABLE OF CONTENTS (Cont'd)

PAGE

2.      Defendant's Trial Counsel Was Not Ineffective Even if He
        Failed to Discuss the Possibility of Raising Either an Entrapment
        Defense or a Duress Defense at Trial, as Neither of These
        Defenses Could Have Been Properly Raised by Defendant . . . . . . . . . . . . .  16

3.      Defendant's Guilty Plea Was Not a Part of a "Package Deal"
        That Should Have Been Disclosed to the Court When Defendant
        Entered His Guilty Plea . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

4.      Defendant's Unsupported Claims of Innocence Are Insufficient
        to Allow Him to Withdraw His Guilty Plea . . . . . . . . . . . . . . . . . . . . . . . .  20

III.    CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

ii

TABLE OF AUTHORITIES

FEDERAL CASES                                                                 PAGE(S)

Hill v. Lockhart,
        474 U.S. 52 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

Shah v. United States,
        878 F.2d 1156 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

United States v. Alber,
        56 F.3d 1106 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5, 20

United States v. Asuncion,
        973 F.2d 769 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

United States v. Atencio,
        586 F.2d 744 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

United States v. Bailey,
        444 U.S. 394 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17, 18

United States v. Baramdyka,
        95 F.3d 840 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

United States v. Barker,
        514 F.2d 208 (D.C. Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

United States v. Becerra,
        992 F.2d 960 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

United States v. Carr,
        80 F.3d 413 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

United States v. Castello,
        724 F.2d 813 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

United States v. Chong,
        167 F.Supp.2d 1160 (D. Hi. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

United States v. Del Valle-Rojas,
        463 F.2d 228 (9th Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

United States v. Doyle,
        981 F.2d 591 (1st Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

United States v. Hasson,
        2008 WL 2894087 (10th Cir. July 29, 2008) . . . . . . . . . . . . . . . . . . . . . . . .   5

United States v. Hyde,
        520 U.S. 670 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4, 13

iii

TABLE OF AUTHORITIES (Cont'd)

FEDERAL CASES                                                    PAGE(S)

United States v. Jennell,
    749 F.2d 1302 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

United States v. Joelson,
    7 F.3d 174 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

United States v. Kerr,
    742 F.2d 493 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

United States v. Manarite,
    44 F.3d 1407 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Meraz-Solomon,
    3 F.3d 298 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Nostratis,
    321 F.3d 1206 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 9

United States v. Ortega-Ascanio,
    376 F.3d 879 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

United States v. Posada-Rios,
    158 F.3d 832 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

United States v. Rascon-Gamez,
    832 F. Supp. 1346 (D. Az. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

United States v. Reyna-Zaragoza,
    2007 WL 1430332 *2 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Shapiro,
    669 F.2d 593 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

United States v. Turner,
    898 F.2d 705 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

United States v. Vasquez-Velasco,
    471 F.2d 294 (9th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Vidakovich,
    911 F.2d 435 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Yazzie,
    407 F.3d 1139 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States Verduzco,
    373 F.3d 1022 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

TABLE OF AUTHORITIES (Cont'd)

FEDERAL RULES                                                                    PAGE(S)

Federal Rule of Criminal Procedure 11(d)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

I.

PRELIMINARY STATEMENT

In April 2001, defendant Crispin Alvidrez, aka "Conejo," ("defendant") was scheduled to proceed to trial with eight other defendants, including two of his brothers, in a case before this Court involving acts of violence and drug trafficking they committed on behalf of the Mexican Mafia, charges that could have subjected defendant to a sentence of life imprisonment and that at one point made defendant eligible for the death penalty.  After failing in an attempt to sever his trial from that of his co-defendants, defendant signed a written plea agreement with the government in which he explicitly stipulated to a sentence of 216 months five days before he was set to proceed to trial.  The following day, during an exhaustive hearing before this Court, defendant acknowledged, under oath, that he fully understood the consequences of entering his guilty plea, that he understood the nature of the charges to which he was pleading guilty, that he understood that he would be receiving a 216 month sentence as a result of entering his guilty plea, that he had fully discussed his case with his counsel, that he was fully satisfied with the representation that he had received from his counsel, and that he had participated in a wide array of racketeering acts on behalf of the Mexican Mafia.  In light of these representations by defendant, as well as others he made to this Court acknowledging that his decision to enter his guilty plea was knowingly and voluntarily made, this Court accepted defendant's guilty plea.

Several months after entering his guilty plea, after the trial he had unsuccessfully tried to sever himself from was well underway and defendant had a chance to gauge how that trial was proceeding from the sidelines, defendant had a change of heart and advised this Court that he wished to withdraw his guilty plea.  Finding that this effort by defendant to withdraw his guilty plea was motivated by an improper purpose and without a proper legal basis -- a finding fully supported by the timing of defendant's request -- this Court denied defendant's motion.

In October 2004, the Ninth Circuit remanded this case to this Court to allow defendant to bring a motion to withdraw his guilty plea with the benefit of new counsel.  In June 2006, over one and one-half years following the remand of this case, defendant finally filed such a motion to withdraw his guilty plea.  In this motion, defendant contended that the guilty plea he entered over <u>five</u>

1

1  years earlier was not knowingly and voluntarily entered because (1) he did not understand the terms of

2  the plea agreement he entered with the government; (2) he was "confused" at the time he entered his

3  guilty plea because his stepbrother had died shortly before he entered his plea; and (3) "new

4  evidence" came to light in the case after he entered his guilty plea.  Defendant further asserted that the

5  exhaustive hearing in which he entered his guilty plea was defective because (1) he was not properly

6  advised of the nature of the charges against him; (2) he was not properly advised of the punishment he

7  faced; and (3) this Court allegedly encouraged defendant to enter his guilty plea and thus improperly

8  injected itself into the plea proceedings in violation of Rule 11 of the Federal Rules of Criminal

9  Procedure.  Finally, defendant asserted that his trial counsel was ineffective and that, in retrospect, he

10  was not satisfied with the legal representation he received.

11         In a filing, dated July 5, 2006, the government explained, in detail, why the arguments in

12  defendant's motion were without any merit.  Now, a full two years later, defendant has filed a

13  supplemental motion setting forth a new host of reasons why he should be allowed to withdraw the

14  guilty plea he entered over seven years ago, asserting: (1) he should be allowed to withdraw his guilty

15  plea because he became aware of "new evidence" after he entered his guilty plea that purportedly

16  would have altered his decision to plead guilty; (2) his trial counsel provided him with ineffective

17  assistance of counsel by failing to apprise him that he could have somehow raised an entrapment

18  and/or duress defense at trial; (3) the parties erred by failing to advise this Court at the time of

19  defendant's guilty plea that defendant's plea was purportedly the part of a "package deal" involving

20  defendant and his brothers; and (4) there is evidence of defendant's "legal innocence" to the RICO

21  conspiracy crime he admitted to committing under oath.

22         Although defendant changes the excuses for why he should be allowed to withdraw his guilty

23  plea with the frequency that he changes his attorneys in this case,[1] what has not changed is the lack of

24  merit to the positions he has taken in his frantic attempt to withdraw his guilty plea.  There was no

25  "new evidence" disclosed following defendant's guilty plea that justifies allowing defendant to

26  _____

27         [1]      No less than four attorneys have skillfully and diligently represented defendant before
   this Court since his arrest, and defendant has had no shortage of complaints concerning each one of
28  them.

2

1  withdraw his guilty plea; defendant's counsel was not ineffective if he failed to raise the possibility of

2  raising an entrapment and/or a duress defense at trial, as neither defense had any merit to it;

3  defendant's guilty plea was not the part of any sort of "package deal," and all aspects of defendant's

4  plea were disclosed to the Court when defendant entered his plea; and the evidence overwhelming

5  shows that defendant was not innocent of the charge to which he pled guilty.  Moreover, two

6  important factors this Court must consider when deciding whether defendant should be allowed to

7  withdraw his guilty plea -- the extremely belated timing of defendant's various requests to withdraw

8  his plea and the prejudice the government would suffer if defendant were allowed to withdraw his

9  guilty plea more than seven years after the fact -- both weigh heavily against permitting defendant to

10  withdraw his guilty plea now.

11       In short, as this Court correctly concluded back in 2001, there is no proper legal basis to allow

12  defendant to withdraw his guilty plea and defendant's efforts to withdraw his guilty plea well after the

13  trial of his former co-defendants commenced was an improper attempt by defendant to obtain the

14  severance he so desperately wanted earlier in the case.  Accordingly, defendant's belated motion

15  should be denied in its totality.

16  II.

17  ARGUMENT

18       Under Federal Rule of Criminal Procedure 11(d)(2)(B), a defendant may withdraw a guilty

19  plea before a district court imposes sentence if he can "show a fair and just reason for requesting the

20  withdrawal."  It is the defendant's burden to establish a "fair and just reason" for his request, and

21  absent such a showing, a defendant has no right to disrupt the criminal justice process, renege on his

22  sworn word, and waste the time of both the court and the parties by withdrawing his guilty plea.

23  United States v. Nostratis, 321 F.3d 1206, 1208 (9th Cir. 2003).  Whether such a request should be

24  granted is almost completely within the discretion of the district court, which is in the best position to

25  weigh the facts and judge the credibility of the various representations made by defendant and others

26  concerning the reasons why withdrawal is sought.  Id.

27       The Supreme Court has made it clear that the "fair and just reason" standard does not permit a

28  defendant to withdraw his guilty plea "simply on a lark," "especially after the defendant has sworn in

3

1   open court that he actually committed the crimes, after he has stated that he is pleading guilty because

2   he is guilty, after the court has found a factual basis for the plea, and after the court has explicitly

3   announced that it accepts the plea." <u>United States v. Hyde</u>, 520 U.S. 670, 676 (1997).  Permitting a

4   defendant to withdraw freely from the "grave and solemn act" of pleading guilty under any less a

5   standard, "would degrade the otherwise serious act of pleading guilty into something akin to a move

6   in a game of chess." <u>Id.</u> at 677.

7        Here, several factors, including the belated nature of defendant's request to withdraw his

8   guilty plea and the prejudice that would be inflicted on the government if defendant were allowed to

9   withdraw a guilty plea he entered more than seven years ago, strongly favor rejecting defendant's

10  motion.  Moreover, defendant has not provided a "fair and just" reason to withdraw his guilty plea in

11  any event.

12  A.   DEFENDANT'S DELAY IN FILING HIS MOTION TO WITHDRAW HIS GUILTY PLEA,
         AS WELL AS THE PREJUDICE THAT WILL BE INFLICTED ON THE GOVERNMENT
13       IF DEFENDANT IS ALLOWED TO WITHDRAW HIS PLEA MORE THAN SEVEN
         YEARS AFTER THE FACT, ARE TWO FACTORS THAT STRONGLY FAVOR A
14       DECISION TO DENY DEFENDANT'S MOTION

15       In evaluating whether a defendant has presented a "fair and just reason" to withdraw his guilty

16  plea, two important factors a district court must consider are: (1) whether the defendant has delayed in

17  filing the motion; and (2) whether the government will be prejudiced if the motion to withdraw the

18  plea is granted.[2]  <u>See</u> <u>United States v. Vasquez-Velasco</u>, 471 F.2d 294, 295 (9th Cir. 1973)

19  (recognizing that prejudice to the government is a factor to consider in evaluating the merits of a

20  motion to withdraw a guilty plea); <u>United States v. Del Valle-Rojas</u>, 463 F.2d 228, 229 (9th Cir.

21  1972) (same); <u>United States v. Rascon-Gamez</u>, 832 F. Supp. 1346, 1349 (D. Az. 1993) (recognizing

22  that a district court may consider the timing and circumstances of a motion to withdraw a guilty plea

23  when determining whether it has merit); <u>see also</u> <u>United States v. Reyna-Zaragoza</u>, 2007 WL 1430332

24  _____

25       [2]   Other factors the court should consider include: (1) whether the defendant has
         asserted his innocence; (2) the inconvenience to the court if the motion is granted; (3) the quality of
26       defendant's assistance of counsel; (4) whether defendant's plea was knowing and voluntary; and (5)
         whether the granting of the motion would cause a waste of judicial resources.  <u>See e.g.</u>, <u>United</u>
27       <u>States v. Yazzie</u>, 407 F.3d 1139, 1142 (10th Cir. 2005).  All of these factors also favor denying
         defendant's motion.
28

1   *2 (9th Cir. 2007) (concluding that even if newly discovered impeachment evidence constitutes a fair

2   and just reason for withdrawal of a guilty plea, a district court is within its discretion to deny a

3   defendant's motion to withdraw his plea when such withdrawal would materially prejudice the

4   government).

5          Here, there is no question that defendant delayed bringing his initial oral motion to withdraw

6   his plea until almost six months after he entered his guilty plea, that he brought this motion only after

7   seeing how the evidence played out in the trial he previously unsuccessfully sought to obtain a

8   severance from, that he first confirmed his wish to withdraw his guilty plea on the date he was

9   initially scheduled to be sentenced, and that he has now waited almost <u>four years</u> to state the

10  purported grounds to withdraw his plea since the remand of his case by the Ninth Circuit back to this

11  Court in October 2004.  All of these facts weigh heavily in favor of denying defendant's motion, and

12  they confirm that the withdrawal sought by defendant was intended to serve the purpose cited by this

13  Court back in 2001 rather than the purported reasons he has only embraced years later.  <u>Nostratis</u>, 321

14  F.3d at 1211 (holding that a two-year delay between the defendant's guilty plea and his plea

15  withdrawal motion favored rejecting the motion); <u>United States v. Alber</u>, 56 F.3d 1106, 1111 (9th Cir.

16  1995) (rejecting a motion to withdraw a plea that was brought after three months elapsed between the

17  plea and the motion); <u>see</u> <u>also</u> <u>United States v. Hasson</u>, 2008 WL 2894087 (10th Cir. July 29, 2008)

18  (holding that the fact a defendant delayed filing his motion to withdraw his guilty plea until days

19  before he was scheduled to be sentenced and almost four months after he entered his plea weighed in

20  favor of denying the motion); <u>United States v. Carr</u>, 80 F.3d 413, 420 (10th Cir. 1996) (reasoning that

21  a three-month delay in filing a motion to withdraw a guilty plea weighs against the defendant); <u>United</u>

22  <u>States v. Vidakovich</u>, 911 F.2d 435, 439-40 (10th Cir. 1991) (recognizing that a five-month delay in

23  filing a motion to withdraw a guilty plea weighs against the defendant); <u>United States v. Barker</u>, 514

24  F.2d 208, 222 (D.C. Cir. 1975) ("[I]f the defendant has long delayed his withdrawal motion, and has

25  had the full benefit of competent counsel at all times, the reasons given to support withdrawal must

26  have considerably more force").

27         Second, allowing defendant to withdraw his guilty plea well over seven years after he entered

28  it would result in significant prejudice to the government, as the passage of time would make it

1   extremely difficult to try defendant on the crimes he admitted to committing under oath back in April

2   2001. At this point, the whereabouts of a number of witnesses to the events at issue in the case is

3   unknown, the lead prosecutor in the case is no longer with the United States Attorney's Office in Los

4   Angeles, and the passage of time would undoubtedly impact the memories of witnesses who would be

5   called to testify at trial, even if they could be located. All of these facts further affirm why defendant

6   should not now be allowed to withdraw the guilty plea he knowingly and voluntarily entered before

7   this Court more than seven years ago. See Rascon-Gamez, 832 F. Supp. at 1349 (rejecting a motion

8   to withdraw a plea where the passage of time between the plea and the motion filed by the defendant

9   prejudiced the government by making its case against the defendant substantially more difficult).

10  B.    THE TIMING OF DEFENDANT'S EFFORTS TO WITHDRAW HIS GUILTY PLEA
            FURTHER CONFIRMS THAT THE MOTIVE BEHIND DEFENDANT'S EFFORTS TO
11          WITHDRAW HIS GUILTY PLEA WAS AN IMPROPER MOTIVE

12        As the courts have recognized, "[b]ecause the timing of a defendant's attempted plea

13  withdrawal is highly probative of motive, close scrutiny of the chronology is important in

14  adjudicating whether retraction is fair and just." United States v. Doyle, 981 F.2d 591, 595 (1st Cir.

15  1992). Here, defendant sought to sever his case from that of his co-defendants, who included two

16  individuals against whom the government sought the death penalty. After this motion was denied,

17  defendant entered his plea four days before five of his co-defendants proceeded to trial, including the

18  co-defendants defendant sought to sever his case from earlier. Defendant then waited to make a

19  request to withdraw his guilty plea until after the trial of his co-defendants concluded and the jury was

20  deliberating, so he had the benefit of seeing how the evidence in that trial unfolded. This was almost

21  six months after defendant entered his guilty plea. In light of these facts, the record fully supports this

22  Court's observation in 2001 that the grounds defendant asserted in his effort to change his plea were

23  entirely pretextual and defendant's true motivation was strategic in nature and part of an effort to

24  obtain an improper severance from defendant's co-defendants who proceeded to trial.

25

26

27

28

C.     THE NEW MOTIVATIONS DEFENDANT HAS INVENTED AS THE PURPORTED
REASONS WHY HE SHOULD HAVE BEEN ALLOWED TO WITHDRAW HIS PLEA DO
NOT OVERCOME THE FACT DEFENDANT SOUGHT TO WITHDRAW HIS GUILTY
PLEA FOR AN IMPROPER PURPOSE BACK IN 2001

        In his supplemental motion, defendant asserts a number of purported reasons why he should

be allowed to withdraw his guilty plea.  Since these purported reasons are only being raised now,

more than seven years after defendant entered his guilty plea, it is clear that none of them explain the

true reason why defendant sought to withdraw his guilty plea back in October 2001.  Accordingly,

none of the arguments offered by defendant now undermine this Court's finding in 2001 that

defendant sought to withdraw his guilty plea for an improper purpose.  Moreover, none of the

arguments offered by defendant provide a "fair and just" reason to allow defendant to withdraw his

guilty plea more than seven years after the fact.

        1.     The Purported Discovery Of "New Evidence" Does Not Justify Allowing Defendant
               To Withdraw His Guilty Plea Now

               a.     The "New Evidence" Defendant Cites as a Basis to Withdraw His Guilty Plea
                      Was Evidence that Existed and Had Been Disclosed to the Defense Prior to the
                      Time Defendant Entered His Guilty Plea

        In order for something to qualify as "newly discovered evidence" that constitutes a "fair and

just reason" to withdraw a guilty plea prior to sentencing, it must be evidence that did not exist at the

time defendant entered his guilty plea.  See United States v. Ortega-Ascanio, 376 F.3d 879, 883 (9th

Cir. 2004) (recognizing that "fair and just reasons" to allow a defendant to withdraw a guilty plea

include the discovery of new evidence and other reasons "that did not exist when the defendant

entered his plea").  In each instance cited by defendant in his supplemental motion, the "new"

evidence that he claims would have motivated him to proceed to trial rather than plead guilty was not

"new" at all, but rather evidence the government had disclosed to all of the defendants many months

7

before defendant's scheduled trial.[3]  Accordingly, there was no "new evidence" disclosed in this case that favors allowing defendant to withdraw his guilty plea.

          **b.**     **Defendant Did Not Receive Ineffective Assistance of Counsel from his Former Trial Counsel, Darryl Exum**

Government counsel has made defendant's former counsel, Darryl Exum, aware of the new allegations defendant has made concerning his performance as his attorney.  In response to these allegations, Mr. Exum has informed government counsel that:  (1) he thoroughly reviewed the charges defendant faced with defendant prior to the time he entered his guilty plea; (2) he thoroughly reviewed the evidence against defendant as to each of those charges with defendant prior to the time he entered his guilty plea, including the numerous conversations in which defendant was intercepted over wiretaps discussing the illegal activity that formed the basis for the charges; (3) he kept abreast of the testimony in the Martinez trial and, in fact, met with Martinez's lawyers to discuss developments in that trial in order prepare for defendant's defense in his own trial; (4) he recalls discussing particular evidence with defendant prior to his guilty plea that defendant now claims was not disclosed to him prior to his guilty plea, including Rudy Rosales' statements concerning his purported involvement in the Montebello Murders and the confusion that emerged in the Martinez trial concerning who shot at John Turscak; and (5) defendant freely and voluntarily made the decision to accept the government's plea offer, without any coercion on anyone's part, and did so because he was guilty of the offenses charged and knew he would face a life sentence if convicted of those offenses.[4]  (Dugdale Decl. at ¶ 2).

---

[3]     There is only one piece of evidence cited by defendant for which this is not the case, as information concerning the fact that Ronald Moreno, the owner of American Performance, was a target of a DEA/BNE drug investigation was not uncovered until after defendant pled guilty. However, this Court, in the context of a motion for a new trial brought by defendant Mariano Martinez, has already ruled that this evidence was not exculpatory, so it is difficult to see how that "new evidence" assists defendant here.

[4]     At the time of this conversation with government counsel, Mr. Exum was on a vacation outside of the country. The government will attempt to file a declaration signed by Mr. Exum detailing these facts upon his return to the United States, prior to the hearing scheduled on defendant's motion.

1    Defendant's claims in his supplemental motion are not only contradicted by what his former

2   counsel says, they are contradicted by the statements that defendant made when he entered his guilty

3   plea before this Court more than seven years ago. At that time, defendant admitted, under oath, that

4   (1) he had discussed the charges and the case against him with his counsel (see Exhibit A (Reporter's

5   Transcript of Defendant's Change of Plea Proceeding) at p. 6); (2) he was fully satisfied with the

6   representation provided by his trial counsel and the advice that his trial counsel had given to him over

7   the course of the case (id.); and, most importantly, (3) he was guilty of the crime to which he pled

8   guilty. (Exhibit A at pp. 8-12). These solemn declarations that defendant made during his plea

9   proceeding are presumed to be truthful, and, as numerous courts have recognized, they should be

10   credited over the subsequent, inconsistent declarations defendant has made years down the road.

11   Nostratis, 321 F.3d at 1210; United States v. Castello, 724 F.2d 813, 815 (9th Cir. 1984) ("The

12   [district] court is entitled to credit [defendant's] testimony at the Rule 11 hearing over her subsequent

13   affidavit"); Shah v. United States, 878 F.2d 1156, 1162 (9th Cir. 1989) ("Solemn declarations in open

14   court carry a strong presumption of verity").

15    In light of these facts, it is clear that defendant did not receive ineffective assistance of counsel

16   from Mr. Exum in connection with any aspect of this case, including his decision to plead guilty.

17   Thus, there is no "fair and just" reason to allow defendant to withdraw his guilty plea.

18

19

20

21

22

23

24

25

26

27

28

c.    Even if One Overlooks the Contrary Statements of Defendant's Former Counsel Concerning His Review of the Evidence with Defendant as Well as Defendant's Statements Under Oath When he Entered his Guilty Plea, The "New Evidence" Defendant Claims He "Discovered" Following His Guilty Plea Could Not Have Plausibly Motivated Defendant's Decision to Seek to Withdraw his Guilty Plea in 2001

        In his supplemental motion, defendant makes the implausible argument that he would not have entered a guilty plea and would have proceeded to trial had he been aware of certain testimony that occurred in the Martinez trial and which he claims he learned about only after he entered his guilty plea.  Even if one concludes that defendant was, in fact, unaware of the testimony he discusses in his supplemental motion -- a conclusion that would require crediting the testimony of defendant over that of his former counsel and his own words, under oath, before the Court -- defendant's motion should still fail.

        Within the context of a motion to withdraw a guilty plea, a defendant seeking to show ineffective assistance of counsel, as defendant is here, must establish that his attorney's purported "ineffective performance 'affected the outcome of the plea process . . . [such] that absent the erroneous advice, [defendant] would have insisted on going to trial." United States v. Baramdyka, 95 F.3d 840, 844 (9th Cir. 1996) (quoting Hill v. Lockhart, 474 U.S. 52, 58 (1985)).  Whether a defendant would have insisted on going to trial under such circumstances is an evaluation that must be made objectively.  Hill, 474 U.S. at 59-60.  Here, in light of the timing of defendant's motion and the delayed manner in which it was brought, it is much more credible to believe that defendant's motivations to withdraw his guilty plea were improper and not based upon any purported ignorance of the evidence against him.[5]

_____

        [5]    When pleading guilty, defendant admitted to engaging in "numerous, related illegal acts" on behalf of the Mexican Mafia, including extortion, narcotics trafficking, and a number of violent crimes, including the conspiracy to murder and the murder of Richard Serrano, the conspiracy to murder John Detevis, the conspiracy to murder John Turscak, and the conspiracy to murder Lorenzo Lopez. (Exhibit A at pp. 8-12).  The government was only obligated to prove that defendant conspired to engaged in two of these racketeering acts on behalf of the Mexican Mafia in order to convict defendant of the RICO conspiracy charge to which he pled guilty.  See 18 U.S.C. § 1961(5).  Accordingly, the government could have convicted defendant of the RICO conspiracy count he pled guilty to committing by merely showing that defendant was involved in collecting extortion payments on behalf of the Mexican Mafia and engaged in drug trafficking on behalf of this

1                           (1)    The Montebello Murders

2          As part of his plea agreement with the government, defendant admitted his involvement in

3  coordinating the efforts to murder Richard Serrano at the American Performance auto body shop in

4  Montebello on November 19, 1998 (an event commonly referred to during the case as the

5  "Montebello Murders"), and defendant affirmed his involvement in this racketeering act under oath at

6  the plea proceeding held before this Court.  (Exhibit A at pp. 10-12).  Apart from these admissions,

7  intercepted telephone calls, telephone records, and the testimony of Max Torvisco confirmed the

8  involvement of defendant and his brothers, Fernando and Javier, in the efforts to track Serrano on the

9  date he was murdered to the location where Serrano and the other victims were murdered.[6]  (See e.g.,

10  Exhibit B (Government's Exhibit 437-A (a transcript of a telephone call shortly before the

11  Montebello Murders in which Martinez (1) informed Torvisco that Fernando Alvidrez, aka "Cuate,"

12  had located Richard Serrano and was following him; (2) asked Torvisco to get his "City Terrace

13  crew" ready to join in the hunt for Serrano; (3) confirmed that Torvisco knew how to get in contact

14  with defendant; and (4) relayed the plan to have the members of Torvisco and Martinez's crews

15  "converge" on the location where Serrano ended up)); Exhibit C (Government's Exhibit 1819 (a chart

16  showing phone contacts between defendant and the others involved in the Montebello Murders on

17  November 19, 1998)).

18          Defendant now argues that he would not have admitted his involvement in the Montebello

19  Murders had he been aware that an individual named Rudy Rosales told someone he was arguing with

20  on the date of the murders that he had just killed three people and would kill again if provoked.  This

21  argument is nonsense.

22          The evidence at trial confirmed beyond any doubt that Rudy Rosales had nothing to due with

23  committing the Montebello Murders, and it is not plausible to believe that defendant's decision to

24  _____

25  criminal organization -- activities the government had ample proof that defendant committed and
26  which go unmentioned in defendant's supplemental motion.

27          [6]    Indeed, defendant's involvement in this crime went beyond the date of the murders,
   as the evidence confirmed that defendant took on the role of gauging whether the shooters, including
28  Mario Castillo, could be trusted to conceal the Mexican Mafia's involvement in this crime.

1   plead guilty would have changed even if he was unaware of the facts surrounding Rosales' purported

2   involvement in that crime.  As confirmed during the Martinez trial, Rosales was a troubled individual

3   from Montebello who got into a fight with a neighbor after the Montebello Murders had been reported

4   on a police scanner and told the neighbor that he had just killed three people and would kill again if

5   provoked.  While this was unquestionably a foolish comment on the part on Rosales, the evidence

6   introduced at the Martinez trial clearly confirmed that Rosales played no role whatsoever in

7   committing the Montebello Murders.  First, following the murders, Rosales was extensively

8   investigated by the detectives assigned to the case and cleared of any involvement in the crime.  (See

9   Exhibit D (Testimony of Detective Randy Thomas, dated October 25, 2000) at pp. 77-78).  Second, at

10  the approximate time of the Montebello Murders, Rosales was spotted by a neighbor walking around

11  in slippers, and he appeared to be completely calm and composed, not at all exhibiting the demeanor

12  of someone who had shot four people, murdering three of them.  (See Exhibit E (Testimony of Robert

13  Jones, dated December 13, 2000) at pp. 26-35).  Finally, the ballistic evidence in the case confirmed

14  beyond any reasonable doubt that there were two shooters involved in the Montebello Murders, not

15  one.  (See Exhibit F (Testimony of James Carroll, dated November 29, 2000) at pp. 9-26).  Indeed, as

16  the Court will recall, during the course of the trial defendant absented himself from as a result of his

17  guilty plea, the government discovered that some of the bullets and casings found at the scene of the

18  Montebello Murders were consistent with having been fired by a gun, eventually recovered by the

19  FBI, that had been discarded by members of the City Terrace gang at the request of defendant Marcel

20  Arevalo shortly after Torvisco's cooperation was disclosed to the defendants.

21          In light of the totality of the facts involving Rudy Rosales' purported involvement in the

22  Montebello Murders, it is not plausible to believe that defendant's decision to plead guilty was

23  somehow impacted by his purported failure to know this information.  Indeed, given that this

24  information did not prevent a jury from convicting defendant Martinez for his involvement in the

25

26

27

28

12

1   Montebello Murders, a fact defendant clearly knew at the he entered his guilty plea, it is not only

2   implausible, but impossible, to believe defendant's story in this regard.[7]

3                    (2)      The Conspiracy to Kill Jessie Detevis

4         As part of his plea agreement with the government, defendant admitted that he participated in

5   numerous efforts to track down and kill Jessie Detevis, a member of the Rockwood street gang and a

6   close associate of Turscak, and defendant affirmed his involvement in this criminal activity under

7   oath at the plea proceeding held before this Court. (Exhibit A at p. 9).

8         Once again, the evidence concerning defendant's commission of this racketeering act was

9   overwhelming. On several different occasions, intercepted wiretap calls involving defendant

10  confirmed that defendant had armed himself with a firearm and participated in efforts to hunt down

11  and kill Detevis. In one of these instances -- which occurred on October 24, 1998 -- defendant took a

12  lead role in a plan to kidnap Detevis after he showed up for a meeting that Mariano Martinez had

13  arranged with Detevis at the Estrada Courts housing projects, a plan that was only thwarted when the

14  FBI arranged for the police to flood the area with patrol cars in an effort to disrupt the mayhem

15  planned by defendant and his criminal partners. (See Exhibit G (Testimony of Max Torvisco, dated

16  October 31, 2000) at pp. 54-67 and Governments Exhibits 303-A, 304-A, 305-A, 306-A, 307-A, and

17  308-A)).

18        Despite his admissions during the change of plea before this Court and the clear evidence

19  confirming defendant's involvement in the conspiracy to kill Detevis, defendant asserts that he would

20  not have admitted his involvement in the efforts to kill Detevis had he been aware of facts suggesting

21  that Detevis ordered a drive-by shooting that occurred at his residence after a confrontation that

---

23      [7]      Defendant also asserts that the fact defendants Jacobo and Castillo were acquitted at
        trial someone lends credence to the notion defendant should be granted a new trial. This is not the
24      case at all. Since both Jacobo and Castillo were acquitted after defendant entered his guilty plea,
        that is not a fact that could have possibly entered into defendant's calculus when he decided to enter
25      his guilty plea. What very well may have entered into defendant's mind, however, was the thought
        of pleading guilty, waiting to see how the evidence in the trial he was scheduled to sit in turned out,
26      and then seeking to withdraw his guilty plea after seeing how that trial turned out. Such chicanery,
        however, does not provide a fair and just reason to allow a defendant to withdraw his guilty plea and
27      "would degrade the otherwise serious act of pleading guilty into a game of chess." Hyde, 520 U.S.
28      at 677.

                                                    13

1   occurred at defendant's garage in February 1998 and that featured an attempt on the part of Detevis

2   and Turscak to kidnap his brother, as defendant now claims such facts would have supported a self-

3   defense claim. (Defendant's Supplemental Motion at p. 11.)

4        This argument simply makes no sense. A self-defense claim justifies a use of force only when

5   a person reasonably believes that such a use of force is necessary for the defense of oneself or another

6   against the immediate use of unlawful force. See Ninth Circuit Jury Instruction 6.7. If defendant was

7   truly unaware until well after his arrest that Detevis was behind this purported drive-by shooting, he

8   could not have plausibly been acting in self-defense when he targeted Detevis for murder because, if

9   things were as he now represents them, he would not have had any idea that he needed to use force to

10  protect himself from Detevis. Conversely, if defendant was aware of this incident involving Detevis

11  at the time it occurred, there was no "new evidence" apart from information defendant already had

12  concerning Detevis and his involvement in a conspiracy to kill him at the time defendant entered his

13  guilty plea. Accordingly, defendant's claims concerning what he purportedly knew and did not know

14  when he entered his guilty plea concerning this particular aspect of his plea should be rejected.

15                  (3)   The Conspiracy to Kill John Turscak

16       As part of his plea agreement with the government, defendant admitted that he participated in

17  efforts to kill Eme member John Turscak throughout 1998, including the attempted murder of

18  Turscak that took place on Easter Sunday 1998, and defendant affirmed his involvement in this

19  racketeering act under oath at the plea proceeding held before this Court. (Exhibit A at p.10).

20       Throughout the fall of 1998, defendant was intercepted over wiretap conversations discussing

21  efforts to look for Turscak and members of his family in order to kill them. Defendant does not deny

22  that was the case in his supplemental motion. He merely asserts that at the time of his guilty plea he

23  was unaware of exculpatory information concerning a single aspect of his involvement in the

24  conspiracy to murder Turscak. Specifically, defendant claims that he was somehow unaware that

25  Turscak had testified at Martinez's trial and had identified Torvisco and Rochin as individuals who

26

27

28

1  shot at him on Easter Sunday 1998, contradicting Torvisco and Rochin's testimony that Rochin and

2  defendant were the ones who shot at Turscak.[8]

3        It is not plausible to believe that having this information would have motivated defendant to

4  make a different choice than what he did with respect to his guilty plea.  Turscak was not a believable

5  witness on this and many other points to which he testified, which likely explains why he did not

6  make an appearance on behalf of the defense in the trial defendant absented himself from with his

7  guilty plea.  Turscak harbored obvious animosity toward the government as a result of the

8  government's decision to prosecute him for the unauthorized criminal conduct he engaged in while an

9  FBI informant, and he harbored specific animosity toward Rochin and Torvisco which made the fact

10  that he somehow found the ability to identify them as the people who shot at him during a drive-by

11  shooting completely unsurprising.  Most importantly, however, even if Turscak's testimony on this

12  score was completely believable, this testimony would still not have undermined the other

13  documented instances showing defendant's involvement in efforts to target Turscak and his family for

14  murder.  Accordingly, it is not plausible to believe that defendant's true motivation for seeking to

15  withdraw his guilty plea was the purported realization that this "new evidence" existed.

16                    (4)    The Conspiracy to Kill Lorenzo Lopez

17        As part of his plea agreement with the government, defendant also admitted that he

18  participated in a conspiracy to murder Lorenzo Lopez, aka "Sharky," an individual who Martinez and

19  his crew targeted for murder upon his release from the Los Angeles County Jail in the Fall of 1998,

20  and defendant affirmed his involvement in this crime under oath at the plea proceeding held before

21  this Court.  (Exhibit A at pp. 9-10).

22

23

24  _____

       [8]       Defendant ignores the fact that this testimony does not contradict the admissions he
25  made when entering his guilty plea, as defendant merely admitted to participating in the attempted
    murder of Turscak and did not admit that he was one of the individuals who shot at Turscak.  (See
26  Exhibit A at p. 10).  He also ignores evidence that corroborates Torvisco and Rochin's testimony
    that defendant and his brothers were involved in this shooting, including, among other things, a
27  letter that Mariano Martinez wrote to Torvisco identifying the people involved in this shooting.
28  (See Exhibit H (Testimony of Max Torvisco, dated 10/31/01), at pp. 33-37).

                                                    15

1        In his supplemental motion, defendant asserts that he would not have entered his plea had he

2   been aware that Torvisco failed to testify with certainty that defendant was one of the individuals who

3   waited for Lopez to be released from the Los Angeles County Jail so he could be followed and killed.

4   (Defendant's Supplemental Motion at p. 12).   What defendant ignores, however, is that Torvisco

5   unequivocally identified defendant as being involved in the efforts to find and kill Lopez after the

6   opportunity to kill him immediately after he was released from the Los Angeles County Jail did not

7   materialize.   (See Exhibit I (Testimony of Max Torvisco, dated November 2, 2000) at pp. 63-66).

8   Moreover, considering that this incident that was the subject of Torvisco's testimony was only one of

9   a number of racketeering acts that formed the basis for defendant's guilty plea, it is not plausible to

10   believe that Torvisco's equivocation on this solitary issue could have formed the true motivation for

11   defendant to seek to withdraw his guilty plea.

12        2.   Defendant's Trial Counsel Was Not Ineffective Even if He Failed to Discuss the
     Possibility of Raising Either an Entrapment Defense or a Duress Defense at Trial, as
13            Neither of These Defenses Could Have Been Properly Raised by Defendant

14        In his motion, defendant asserts that evidence of a kidnaping attempt orchestrated by Turscak

15   and Serrano at defendant's garage could have somehow formed the basis for an entrapment defense

16   and duress defense that defendant could have asserted at trial, and he claims that he received

17   ineffective assistance of counsel due to the failure of his former counsel to make him aware of these

18   possible defenses. (Defendant's Supplemental Motion at pp. 13-14).[9]   This argument is without

19   merit.   While It is true that a defense counsel has an obligation to discuss potential defenses with his

20   client prior to having his client enter a guilty plea, this does not obligate defense counsel to discuss

21   every defense with a defendant regardless of its merit.   Here, neither an entrapment defense nor a

22   duress defense could have been properly raised by defendant at trial, let alone raised successfully.

23   Accordingly, defendant's counsel was not ineffective if he failed to discuss these defenses with

24   defendant.

25

26   _____

27       [9]    Defendant also asserts that there were "other plausible defenses" his counsel could
     have raised at trial on his behalf, but leaves the government and this Court guessing what these
28   could possibly be. (Defendant's Supplemental Motion at p. 15.)

1    First, defendant could not have properly raised an entrapment claim at trial relating to the

2    actions that Turscak and Serrano purportedly took in relationship to the violent encounter they had

3    with defendant, his brothers, and various other thugs associated with Mariano Martinez and Max

4    Torvisco in the Spring of 1998.  In order for a defendant to raise a valid entrapment claim, he must

5    show that he was induced into engaging in illegal behavior by the <u>government</u>.  <u>See</u> <u>United States v.</u>

6    <u>Manarite</u>, 44 F.3d 1407, 1417 (9th Cir. 1995) (recognizing that before a defendant may properly assert

7    an entrapment claim at trial he must present evidence that he was induced to commit the crime by a

8    <u>government agent</u> and not otherwise predisposed to commit the crime).  Here, there is no evidence at

9    all to suggest that either Turscak or Serrano were acting on behalf of the government when they

10   participated in the event described by defendant.  In fact, Turscak was ultimately prosecuted for this

11   exact criminal conduct and other criminal conduct he engaged in without the knowledge of the

12   government, and Turscak acknowledged that he was not acting as a government informant when he

13   engaged in such conduct by pleading guilty to the criminal charges that were ultimately brought

14   against him.[10]  Accordingly, defendant was never "entrapped" in any conceivable way by the

15   government into committing the violent acts that followed this episode.

16   Second, defendant could not have properly argued that he participated in the acts of violence

17   charged in the case – including the attempted murder of Turscak on Easter Sunday 1998, the

18   Montebello murders, and the conspiracies to murder other members of Turscak's crew, including

19   Detevis -- due to duress.  Before a defendant may properly assert a duress defense at trial, he must

20   make establish a prima facie case that: (1) he committed the crime charged because of an immediate

21   threat of death or serious bodily harm; (2) he had a well-grounded fear that the threat would be carried

22   out; and (3) there was no reasonable opportunity to escape the threatened harm.  <u>United States v.</u>

23   <u>Bailey</u>, 444 U.S. 394, 410-11 (1980); <u>United States v. Asuncion</u>, 973 F.2d 769, 772 (9th Cir. 1992);

24   <u>United States v. Meraz-Solomon</u>, 3 F.3d 298, 299 (9th Cir. 1993) (showing must be made by a

25   preponderance of the evidence).  If the defendant fails to make a threshold showing as to each and

26

27          [10]     There is also no evidence that Serrano was acting as a BNE informant during this

28   encounter with defendant and that other members of Mariano Martinez's crew.

17

every element of the defense, the jury should not be burdened with hearing evidence relating to the defense at all. <u>Bailey</u>, 444 U.S. at 416; <u>United States v. Shapiro</u>, 669 F.2d 593, 596 (9th Cir. 1992).

Here, defendant cannot conceivably make each of these three showings. First, he cannot show that he faced an <u>immediate</u> threat of death or serious bodily harm at every point during the year-long span he committed the acts of violence to which he pled guilty, because, when asserting a duress claim, "[t]he element of immediacy requires some evidence that [death or serious bodily injury] was <u>present</u>, <u>immediate</u>, and <u>impending</u>." <u>United States v. Atencio</u>, 586 F.2d 744, 746 (9th Cir. 1978) (emphasis added). A person's fear alone does not satisfy the immediacy requirement of a duress or coercion defense. <u>United States v. Joelson</u>, 7 F.3d 174, 179 (9th Cir. 1993); <u>United States v. Becerra</u>, 992 F.2d 960, 964 (9th Cir. 1993); <u>Atencio</u>, 586 F.2d at 746 (upholding exclusion of duress defense from the jury where the defendant was threatened, shot at, and knew that a contract was out on his life); <u>United States v. Jennell</u>, 749 F.2d 1302, 1306 (9th Cir. 1984) (upholding refusal to give duress instruction in a year-long narcotics conspiracy).

Second, he cannot possibly show that he had no possible way of escaping the purported threat he faced from Turscak and the members of his crew.[11] At any point in time during the almost full year that defendant participated in the "war" between the Mexican Mafia faction affiliated with Martinez and the Mexican Mafia faction affiliated with Turscak, defendant could have simply disengaged in this activity, made contact with the police, or done any of a number of different things

_____

[11]     In this regard, the Ninth Circuit has recognized on a number of occasions that a defendant should be precluded from asserting a duress defense unless he "took the opportunity to escape the threatened harm by submitting to authorities at the first reasonable opportunity" to do so. <u>United States v. Jennell</u>, 749 F.2d 1302, 1305 (9th Cir. 1985) (quoting <u>United States v. Contento-Pachon</u>, 723 F.2d 691, 695 (9th Cir. 1984)); <u>see also United States Verduzco</u>, 373 F.3d 1022, 1031 (9th Cir. 2004) (holding that a jury considering a duress defense was properly instructed that "once a defendant has reached a position where he can safely turn himself in to the authorities, he will have a reasonable opportunity to escape the threatened harm"); <u>United States v. Kerr</u>, 742 F.2d 493, 497 (9th Cir. 1984) (recognizing that a duress claim is legally insufficient where the defendant passed up opportunities to escape the perceived harm or to notify the authorities of the perceived harm); <u>United States v. Posada-Rios</u>, 158 F.3d 832, 874 (5th Cir. 1998) ("To establish the absence of a legal alternative [to escape a threatened harm underlying a duress claim] a defendant must show that he had actually tried the alternative or had no time to try it, or that a history of futile attempts revealed the illusionary benefit of the alternative").

1  as an alternative to hunting people down to kill them, dealing in narcotics, or collecting Mexican

2  Mafia extortion payments from gangsters under the Eme's thumb.

3        Accordingly, defendant's counsel was not ineffective if he failed to advise defendant of the

4  prospect of raising an entrapment claim or a duress claim at trial.  Defendant lacked a legal basis to

5  bring either defense, let alone the ability to successfully establish either defense at trial.

6          3.    <u>Defendant's Guilty Plea Was Not a Part of a "Package Deal" That Should Have Been</u>
            <u>Disclosed to the Court When Defendant Entered His Guilty Plea</u>

7

8        Defendant further asserts that he should be allowed to withdraw his guilty plea because his

9  plea was purportedly a part of a "package deal" that should have merited additional scrutiny by the

10  Court when entered.  (Defendant's Supplemental Motion at p. 16.)  This argument is without any

11  basis.  Defendant's plea agreement was not a part of a "package deal" involving the pleas of his

12  brothers or any other defendant.  <u>See</u> Declaration of Robert E. Dugdale at ¶ 3.  The government's

13  acceptance of his guilty plea was not dependant upon his brothers accepting plea offers that were

14  made to them, or vice versa.  <u>Id.</u>  Defendant, in fact, acknowledged this fact when he affirmed in

15  connection with his guilty plea that the plea agreement he entered into with the government

16  constituted the totality of agreements between he and the government.  (Exhibit A at p. 20).  There

17  simply was no "side agreement" like that implied by defendant.  Accordingly, defendant's assertion

18  that there was some aspect to defendant's plea agreement that was not disclosed to the Court and

19  which would have merited further inquiry by the Court is simply not true.[12]

20        [12]     Defendant also asserts that he should be allowed to withdraw his guilty plea because
21  the parties did not confirm to the Court that the plea agreement was the product of a negotiation
between defendant and government.  (Defendant's Supplemental Motion at p. 17).  This is also
22  nonsense.  During the exhaustive change of plea proceeding conducted by the Court, defendant
specifically affirmed that his willingness to plead guilty was the result of discussions that defendant
23  and his attorney had with the attorney for the government.  (Exhibit A at p. 6).  Moreover, the plea
24  agreement between defendant and the government not only confirmed that the agreement was the
product of negotiations between defendant and the government, but explained how the parties
25  reached a binding agreement that defendant should receive a sentence of exactly 216 months.  In a
passage that leaves no doubt that the plea agreement between defendant and the government was the
26  product of a negotiation between the parties, the agreement specifically noted:
27

28       Defendant and the [United States Attorney's Office] agree that an appropriate
     disposition of this case is that the court impose a sentence of 216 months

4.   Defendant's Unsupported Claims of Innocence Are Insufficient to Allow Him to Withdraw His Guilty Plea

While statements made by a defendant during a plea hearing are entitled to a strong presumption of veracity, unsupported claims of innocence made more than seven years after the fact are not entitled to any weight and are insufficient to allow a defendant to withdraw his guilty plea. See United States v. Turner, 898 F.2d 705, 713 (9th Cir. 1990) (affirming denial of motion to withdraw a plea despite a defendant's protest that he was "being blamed for stuff he did not do"); United States v. Alber, 56 F.3d 1106, 1111 ( Cir. 1995) (affirming denial of motion to withdraw plea because "the district court found by a preponderance of the evidence, there was a conspiracy" and "found that the chronology of events question[s] seriously the defendant's position that there was a 'misunderstanding' [concerning his guilty plea]"); United States v. Chong, 167 F.Supp.2d 1160 (D. Hi. 2001) (same).  Here defendant has presented no facts suggesting the existence of truly exonerating evidence not available to the defense prior to trial.  To the contrary, the evidence shows that his conduct was consistent with his guilty plea; his statements during the exhaustive change of plea conducted by this Court confirm that his guilty plea was knowing and voluntary; and there is nothing to suggest that defendant lacked an ability to comprehend his plea arrangement with the government. Indeed, unlike many plea agreements entered into between a defendant and the government, defendant's plea agreement explicitly spelled out the exact sentence he would receive if the plea were accepted by this Court.  Accordingly, there is nothing to suggest defendant is "legally innocent" of the conduct that he admitted under oath during the exhaustive plea proceeding conducted by this Court.

---

imprisonment; 3 years supervised release (with conditions to be fixed by the Court); and a mandatory special assessment of $100.  If convicted of the Montebello murders charged against defendant in Count 1 (Racketeering Act 1a), Count 5, and Count 23, defendant would be sentenced to life imprisonment.  If convicted of only the conspiracies to murder Jesse Detevis, aka "Shady," John Turscak, aka "Stranger," Lorenzo Lopez, aka "Sharkey," and the attempted murder of John Turscak, the parties' best estimate is that defendant would potentially be exposed to a sentence of imprisonment in between 10 and 20 years, depending on his criminal history.  The sentence of 216 months thus accounts for the litigative risk to both parties if they proceeded to trial.

(See Defendant's Plea Agreement at p. 4; Exhibit A at p. 15).

20

III.

CONCLUSION

For each of the foregoing reasons, defendant's motion to withdraw his guilty plea should be denied.

<u>DECLARATION OF ROBERT E. DUGDALE</u>

I, ROBERT E. DUGDALE, declare and state as follows:

1. I am an Assistant United States Attorney and Chief of the Violent and Organized Crime Section of the United States Attorney's Office in the Central District of California. Since March 2001, I have worked on matters in the instant case.

2.      After defendant Crispin Alvidrez filed his supplemental motion to withdraw his guilty plea, I sent a copy of it to his former counsel, Darryl Exum, in an effort to get his reaction to defendant's accusations that Mr. Exum had provided him with ineffective assistance of counsel in the underlying criminal case. I subsequently spoke with Mr. Exum over the telephone, and he informed me, among other things, that (1) he thoroughly reviewed the charges defendant faced with defendant prior to the time he entered his guilty plea; (2) he thoroughly reviewed the evidence against defendant as to each of those charges with defendant prior to the time he entered his guilty plea, including the numerous conversations in which defendant was intercepted over wiretaps discussing the illegal activity that formed the basis for the charges; (3) he kept abreast of the testimony in the Martinez trial and, in fact, met with Martinez's lawyers to discuss developments in that trial in order prepare for defendant's defense in his own trial; (4) he recalls discussing particular evidence with defendant prior to his guilty plea that defendant now claims was not disclosed to him prior to his guilty plea, including Rudy Rosales' statements concerning his purported involvement in the Montebello Murders and the confusion that emerged in the Martinez trial concerning who shot at John Turscak; and (5) defendant freely and voluntarily made the decision to accept the government's plea offer, without any coercion on anyone's part, and did so because he was guilty of the offenses charged and knew he would face a life sentence if convicted of those offense. At the present time, Mr. Exum is out of the country, and I will attempt to have him provide a declaration to the Court detailing his representation of defendant when he returns to the United States next week.

3.      In his motion, defendant states that the plea agreement he entered into with the government was a "package deal," presumably trying to imply that the plea offer extended to him was contingent on a plea offer being excepted by his brothers, Fernando Alvidrez and/or Javier Alvidrez Duarte, or some other defendant. The government's acceptance of defendant's guilty plea was not

1

1  dependant upon his brothers accepting plea offers that were made to them, or vice versa.  The written

2  plea agreement defendant ultimately accepted contained the totality of the agreement entered into

3  between defendant and the government and every material term of that agreement.

4        I declare under penalty of perjury that the foregoing is true and correct.

5  Dated: August 8, 2008

6

7        ROBERT E. DUGDALE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28